So with that you may call the case three twelve zero three four two and rate Custody of C.C. and minor Erica L.F. Appley by Joan Scott versus Clay D. Talent by Jeff Nagle. Mr. Nagle. Thank you. Good afternoon. Good afternoon. Sometimes as a lawyer, I find it hard to explain to my clients or even other lawyers what a case is all about. This one I've been able to distill to a declarative sentence that I think will give us a good place to start this afternoon. The issue in essence is whether blood is thicker than ink. In other words, is the biological father's right to be a father greater than the father who has signed a voluntary acknowledgement of paternity. We're in an anomalous position right now because the trial court has left us with these two rights being equal. We have two legal fathers. This is a conundrum that I'm asking this court to resolve. The course of the litigation is I think clear from the record is this has not been a template for how to establish paternity where there's no marriage. Rather, this is meandered in many different directions. There was a 308. At one point, we were completely out of court, and then we filed a motion for rehearing, and it's taken several years to get here. I like to think that if there is any purpose behind the voluntary acknowledgement of paternity, it is to provide a simple, elegant way to establish who is a father. This has not been a demonstration of that. This has been the antithesis of that. I'm hoping that this court will be able to provide guidance not only to resolve our issues, but going forward to leave us with a ruling that will make it pretty clear that people will know how to deal with the situation where you have a VAP and then you have a biological father. Part of the reason why this has taken the course it has, I think, to be fair to everybody, is that there's been an evolution in the law in the years that this has been going. There was, first of all, back in 2010, the In Re M.M. case. That was a case, basically, that said that the guardian ad litem, on behalf of a minor child, may file a Section 7B petition to establish non-paternity. The argument was made that the VAP is binding. The statute says conclusive, and that's the final word against everybody. The court said no, that GAL may file a 7B, and the father, by virtue of the VAP, can be displaced. The second case that came along in 2011, I'm going to refer to as the Paternity of Unknown Minors Citation, and the case itself is in my brief. Basically, that is maybe the strongest case for our position. There, the father, alleging himself for the Stat 7A, filed and said, I'd like to be the father of my child. Mother and father had signed the VAP, resisted, and the mother refused to do DNA testing for Section 11 of the statute, and the mother was found incontent, and the appellate court said, yes, that's right. He can come in and file a 7A and set aside the VAP and become the father. Third case is, I'll refer to as NRAGM. It came out last year, and that was the marital presumption. For a long time, there was this argument, well, the marital presumptions mean one thing, but the VAP presumptions are conclusive and they mean something else. I think that was disposed of by the first two cases. What's important in NRAGM is, there was an issue of which statute of limitations applies, and the difference was between two years, which, by the way, were under, and 20 years, which seems to be the 7A statute of limitations. The language in the case says that you can file a 7A petition to establish, and as part of the relief in that is a disestablish. Remember, if you read Section 7B, a person in Clay's position could not file a 7B. So if he files a 7A, says, I want to establish my rights, that's nice, and he has done so and succeeded to that extent. However, he's not allowed to file a 7B, so how do we get back to just one father? Well, that's the importance of the GM case, that a 7A petition includes the ability to... Let me see. Have you seen any case in the history of the free world, or behind an iron curtain, for that matter, where a court said a guy's got two legal fathers, both of whom are required to pay child support? Absolutely not. And in fact, really, once I got through these three cases, my next statement was going to be, to clear this up, the court needs to do two things. Apply the plain meaning of 7A, and point out that there's no legislative intent to create a tri-parenting situation in the Illinois Parentage Act. It's not there. If you look at Section 2, it talks about natural or adoptive parents. Section 4 talks about a natural father may be established under the Act. There is no basis for a tri-parenting situation. And your position is, naming your client a legal father is declaring the BAP no longer a legal father. Precisely. Okay. And going to your second issue, though, by the way, once you terminate his legal rights as legal father, you terminate his obligations to pay support, too, right? Precisely. And again, at that point, our second argument, which related to the child support, would only be for the interim period when we had overlapping fathers. And we would go forward looking at the 20% statute knowing that once the BAP father is out, that's what we're doing the rest of the time. Yes, Your Honor. And I think that's probably about all. I mean, I did want to make one other point about the support issue, and that is there was some question as to which standard of review would apply, and it was captioned as a motion for finding. I believe it was a pure legal determination by the court that no, two dads does not create a reason to depart under Section 505. And for that reason, the court never really got into, well, BAP dad makes this much, dad makes this much. We never got into the second step, so I think it's pure law. And it could, of course, be mooted if we prevail on the first point. And if you can't legally have two fathers, then obviously having two fathers can't be a basis for reducing child support because there can't be two fathers. I agree, and again, one kind of, maybe this is a point that I'm not as strenuous about as I, you know, but there's been a time when there have been two fathers. There's been a time starting, I believe, in 2010. Well, not if that order making two fathers was void, I don't think it did. If it was void, it didn't happen. I agree. If it's void, then we should have paid the 20% child support the whole time. There would be no point for the court to address the... Okay, so answer me this. Let's just, this fellow, the BAP, raised his child, right? And so he loves the child, or he's with, anyway, spent some time with the kid, his mother. And had he voluntarily given that money to the mother in support of the child, that wouldn't affect your child support obligation, would it? Would it be a point? What if an uncle from Arkansas sent money? That has no effect on your statutory duty to pay child support, does it? No, it does not. And if he were, if they were married and he were a stepfather, which I think is, he's probably closer to that than anything else,  Are they married? No, not to my knowledge. The last time I got information, that was never... Wasn't there a point in time where a mother said to the court, the voluntary father shouldn't have to pay support because he's living with me? Yes. Support was actually terminated? Right. There was a judgment for paternity, and mother got custody. BAP father paid support briefly. Approximately the time as we were proceeding with our pleadings, they got into a situation where they were then cohabitating and the support obligation was concluded. Now, I wanted to say one thing about the fee issue, and then I can come back and respond to the motions, to the procedural motions, either during this time, or if I don't have time, I'll get that during my rebuttal time. But basically, as to the fee issue, the court is required, at the trial court level, to make a finding of ability to pay. And that does not appear on the face of the order. I don't think I'm being hyper-technical. It doesn't say that the court has jurisdiction of the parties in subject matter. I didn't raise that. I don't like lawyers that do that kind of thing, and I think they get fixed. One way or the other, that would have gotten cleaned up, and I wouldn't be wasting this court's time on that. But this is important, because the record, if you look at the affidavit of my client, if you look at his testimony, if you look at even the court's finding that, well, he could pay $100 a month, but then in a year he would make a substantial loon, you look at the fact that he has other dependents, you look at the fact that he was drawing unemployment at this time, the finding of the ability to pay cannot in any way be presumed. It doesn't appear on the record, and it seems like the court would have had to have made that finding in writing as part of the order, and the facts don't allow that. The facts just plain don't allow that. And so I believe that finding, if that finding had appeared in black and white on the order, it would have been an abuse of discretion. Now, last thing that appears in the brief, and appears in motions that have been filed, were the two procedural questions regarding our first point. And I want to talk about this a little bit, because I think that there is an important legal point here, and that is really, you know, I kind of did this with a belt and suspenders. I filed a petition to establish paternity, and I filed a 2-1401. And counsel's right. Normally there's a window to appeal a 2-1401 immediately after the trial court rules on it. And I don't think that's the death knell to my point of eliminating the VAT father, because I still think my 7A is good. I think my notice of appeal is perfectly good there. I think that the Supreme Court has shown some tolerance for, you know, if you're reasonably apprised people, you get it in within 30 days, you tell people that, yes, the paternity of the VAT father is at issue. And for all these reasons, I think that I've got perfectly good notice on the 7A issue. But I do want to suggest that the 2-1401 motion, it's so intertwined with the 7A petition that it would be almost, it would require two appeals on the same issue if we came back twice. Although the 2-1401 is a separate case, right? No, they were both. The way this got filed is I filed my own freestanding 09F case. At that point we became advised that this case, the parentage case was already out there, and we filed a motion to intervene. We attached to the motion to intervene our parentage petition and our 2-1401, they're like exhibits A and B to my motion to intervene, which was initially denied in a later grant. So they were basically filed simultaneously, both verified, both filed on July 22, 2009, both argued on December 8, 2010, denied from the bench, and the orders denying both of them were entered on February 14, 2011. Both sought overlapping relief. They both sought basically that my client would come in and that the VAP father would be out. The more time I spent with this, the more I wonder whether I muddled into the 2-1401 cul-de-sac kind of unnecessarily. Many of these cases do not do that. The cases that I started with earlier today, many of them are just pure either 7A or 7B cases. The in-rape paternity of unknown minor case, the one where the mother was found in contempt for not doing the DNA testing, the person in my client's situation just filed a 7A. Counsel has two minutes. I mean, a 2-1401 is generally a freestanding action. It's kind of required to be filed in whatever case. It's required to be filed in the case that you're trying to modify something, but then it's somewhat freestanding, yes. So I think, again, we filed our, you know, the MM case, the GAL filed a 7B, did not file a 2-1401, and in NRA GM there, the person who said that he was the biological father, again, filed just to file the 7A. So I don't, I'm willing to, you know, I'm willing to seriously consider the possibility that 2-1401 is superfluous and that we rise or fall on the 7A, but I do believe that because they are so tightly intertwined that the court could find very good reason that appealing that two years ago and then coming back today on the same issue did not have been a good use of the judicial resources. Are there any questions? I can... Thank you. Scott? May it please the court, counsel, to address one of the inquiries of the court, the parties, the respondent and petitioner are married, and the intervener is not married and does not have any dependents except this child and one other child. With respect to whether a 2-1401 action is a freestanding action, we believe that it is, and we believe that that's why you need to appeal a denial of a 2-1401 motion within 30 days pursuant to Supreme Court Rule 303 and 304B. What if the order in essence denying that motion is void? What if it's just... In other words, it has jurisdiction, but there's just no legal... I'm having trouble finding legal authority for two daddies, legal fathers, both required to pay child support. I believe it's a matter of statutory interpretation. I don't think there is a precedential case. In Reg, GM is a second district case. It's not precedential. And it's, as far as I can understand, again upon appeal in the second district. So it really doesn't bind this court in any way. I think that the way we reach through sometimes torturous reasoning, the idea of there being two legal fathers, was that there is no method, or there is no way that the voluntary acknowledgement of paternity is not binding and conclusive as to the signers. And similarly, nothing about that conclusion and presumption interferes with the ability of a third person to file a petition under 7A. But we also believe that the issues raised on the denial of the motion for relief under 2-1401 and the denial of the relief requested under the petition to establish the father-child relationship cannot be reviewed by this court and that jurisdiction hasn't been conferred upon the court. We maintain the denial of the 2-1401 motion should have been appealed within 30 days. And then in the notice of appeal, that was the only order entered on February 14, 2001 that was included in the notice of appeal. The second order entered the same day was not included in the notice of appeal. The appellant attempted to correct that own mistake by putting on the cover page of the appellant's brief a statement of what orders were being appealed from. I don't think that's an effective method. The Supreme Court doesn't recognize that method as creating a reviewable issue before this court when you do not file a timely motion or notice for appeal. So we really feel strongly that our motion to dismiss is well taken. And we would ask that the court find that those two orders that both entered on February 14, 2011 are not reviewable. Because as this court said in Deuce v. Pravinam at St. Mary's Hospital, the appellate court's rights to review and authority and jurisdiction are only conferred by the appellant conforming and complying to the Supreme Court rules. This court has no authority but to dismiss an appeal where the Supreme Court rules are not complied with. And Deuce was a case involving a post-trial motion. And so in that sense, it is quite on point with the fact pattern here. What was the date of the notice of appeal in this case? I think that it was on April 27, 2011. 2012, excuse me. You missed it by over a year. Yes. Yes, so it's not even close. That's right. On occasion we do allow leave to file a late notice of appeal Yes, but there hasn't been a request that I'm aware of in this case. I'm not aware of that either. The only acknowledgment of the problem, I think, is the cover sheet to the appellant's brief which seeks to file a notice of appeal. Let me ask you this. Do you think the trial court has the legal power? Because the trial court's authority is limited also. Do you think the trial court has the legal authority to declare a second person a legal father without at the same time terminating the parental rights and obligations of this other legal father? I think the Parentage Act seems to envision that they both would persist. You think? Yes, and we took the step of calling the Attorney General's office and they said sure. They're not here to say sure for me. But we did give considerable thought to that issue and it doesn't seem as if a person's right, such as the intervener's, under the Parentage Act to file a petition pursuant to 7A is in any way impinged upon by the pre-existence of a voluntary acknowledgment of paternity. Similarly, there is a line of cases that say that those are conclusive as to the signers. And that's why in re-enactments... And those cases mean that the signer can't come back in and say, I didn't know what I was doing, unless he can prove fraud or that he was duped into doing it. And so they are conclusive as to the signer. But then when somebody else comes in there and says, hey, I know you signed this VAP, but you're not the daddy I am. The court, I would assume the trial court, has to decide if I'm going to declare that this guy, the intervener in this case, has done everything he needs to do and because of the Parentage Act hasn't run afoul of any of those provisions, and he says, okay, you've proven this, I'm going to name you the father. This concept that the VAP, by virtue of voluntary acknowledgment of paternity, and it is conclusive as to him, doesn't mean somebody else can't come in there and push that aside and say, because I'm the daddy, I've complied with everything else, and now I'm the legal father and you're not. There doesn't seem to be any basis for pushing the voluntary acknowledgment of paternity father aside, though. And that's why the court certified the question in the 308. What's the public policy behind two legal fathers, both required to pay child support at the same time? Doesn't that complicate the situation even more if both of them are fighting for their rights? We know that fathers have legal rights, constitutionally protected rights, parents. Now you've got two of them, and then the mother, so you've got three legal parents in this child. Do you really think the legislature intended that? I don't know if they did or they didn't intend it, but I do know that by the way they drafted the statute they permitted it. I'm satisfied with that. And I know the court struggled at the trial level with this because that's why the court certified the question and asked us to file a petition for leave to appeal. Because the court was concerned, am I without jurisdiction when there is a legal father to hear a 7A petition? Sort of the opposite conundrum. But I think also that the respondent has been in effect the father to this child. He was there at the hospital at the child's birth. He has supported the child since her birth. He has fulfilled all the obligations he voluntarily assumed in signing the Voluntary Acknowledgement of Fraternity. And he has the right, I think, to continue in that legal relationship that he voluntarily took on. Absent the intervener, if we were before this court, the court would be, and he were one in saying, well, I got DNA results that show I'm not the biological father. Or I just think that I didn't understand well enough when I signed the Voluntary Acknowledgement of Fraternity that I was giving that up. I think that short shrift would be made of that argument. And he's in sort of the opposite position, which is I've done everything you asked me to do to be a father of this child legally, and I've fulfilled all of my obligations, unlike the testimony concerning the intervener was the first person the petitioner told she was pregnant in January 2007. Well, my understanding is here you're the attorney for the mother. And on appeal for the respondent as well. Okay. All right. So you are representing his... I am. Here, I am. He had another attorney. There were four attorneys in the case below, including the guardian ad litem. So did he resist the intervention and the declaration of the intervener? Yes, he did. And the court's ruling was what? And the court's ruling initially was that the petition to intervene was not well taken and it was denied. There was a motion filed for reconsideration. The court permitted intervention. And then the court certified the question, which is do I have jurisdiction to find a second father when I have someone who is legally bound having signed a voluntary acknowledgement of paternity. The guardian ad litem significantly... This case is very distinguishable from In Re Am Em, where the guardian ad litem filed on behalf of the child and the court found that because the child wasn't intrivity with the sign of... The guardian ad litem in this case made the opposite determination. I think that one of the reasons that the parties pursued such long litigation is that there was this inherent view all of us had, everybody gets one father, and this needs to be a reasoned legal finding of who that one father is in this case. But over time, it became apparent to the guardian ad litem that this particular fact situation served the best interest of the child. And he declined, unlike the GAO and In Re Am Em, to file a petition under 7B. He determined the more the merrier, they all love this child, nobody has a whole lot of money in this case, all of them could easily support this child and she still wouldn't have anything beyond her child needs, and that was the GAO's position. But with respect to those issues, I do not think that jurisdictions conferred on the court because of the failure to file timely notices of appeal. And I agree with the question, or the implication of the question that the court asked, which is, I do not understand how providing 20% of your net income as support, because the respondent and the petitioner reside together, is a logical argument. If she were remarried, which she in fact is now, she's going to get support, there's a duty of support between spouses, she's going to get support. So why should the intervener pay less support because she lives with the respondent? Right, we're talking about child support, not maintenance. Yes, child support. Precisely. Other income is irrelevant. That's right, that's right. We also feel that this case is distinguishable from the case cited by the intervener people, ex-rel of the Department of Public Aid, B. Smith. In that case, the court said that a person who signs a voluntary acknowledgement of paternity under cannot, upon getting DNA results, seek to overturn the voluntary acknowledgement of paternity unless he can show fraud, duress, or material mistake of fact. And the intervener sort of tries to bootstrap the mistake of fact of the respondent or his misunderstanding or his lack of information to say that the intervener then can under that section overturn the voluntary acknowledgement of paternity. And I just don't think there's statutory authority for any of this. I mean, quite honestly, if he can't overturn it, can he establish that his rights are superior based on biology? I think he can establish that he has rights. I don't think that he can establish his rights are superior. He can say he has rights. I noticed that he objects and he says that the existence of the respondent as a legal father interferes with his relationship with the child. And cites as an example that the visitation order provides that they alternate father's day. But significantly, the court will notice, that visitation order and the previous visitation order were entered by agreement of the parties. All three parties entered into mediation on the issue of visitation and custody. They came to an agreement and we entered an agreed order to which they all signed off on as to both form and content. So I fail to see how on appeal, evidence of interference by the respondent's rights and the intervener's rights can be corroborated or supported by an agreed order, an agreed visitation arrangement. What's the date of that agreed order? Did it fall close in time to the February 14th date? No, it was entered on July 31st of 2011. Because I'm trying to understand why there wasn't a notice of appeal within 30 days. And I'm trying to understand, was there some sort of a, everybody was getting along? I think progressively people have gotten along much better in this case. I think if you would ask anybody but the intervener, we were surprised at the appeal. Counsel, that's two minutes. Thank you. But I know of no reason that they didn't file the notice of appeal. I believe that's fatal. And beyond that, it was almost six months before the visitation order was entered and there was mediation in between and there was a temporary visitation order entered on May 31st, 2011. Briefly about concerning the issue of the child support guideline, there's some implication in the intervener's brief that the court was prejudiced and that that reflected itself in the child support. And I think a close examination of the record does not support that. The intervener said, I take home $1,000 a week. And the judge said, All right, we'll pay $200. When he said, Oh, later, I was mistaken about my income. I don't make that much. The judge modified the child support. With respect to the attorney's fees, the intervener said, I've paid $13,000 in attorney's fees to my attorney. I've also paid more in an amount I don't remember. I also know I owe more in an amount I don't remember, but I plan to pay those. And then subsequently, he retained his trial attorney as an appellate attorney and filed this appeal. So whatever his income and whatever his financial affidavit said, the court found, quite reasonably, whatever attorney's fees he needs to pay for himself in any amount, he will and can pay. And he also found similarly the petitioner was a full-time student, mother of a five-year-old child. She hadn't finished her academic program. She had no planned or promised employment. And that she didn't have any income at all. And on that basis, the court ordered for him to pay only one-third of her remaining unpaid fees. And I think that was supported by the record, supported by the testimony, and was reasonable and should be affirmed. Thank you. Thank you. Mr. Nagel? Thank you. Can you answer my question? How come you didn't file the notice of appeal within 30 days? That's a very fair question, and that's where I was going to start. Litigation continued until 2012. A final appealable order was actually entered March 28, 2012. It appears in my appendix at A54. This is the last order in the case. This is the case. It actually is the fee order, but we were going back and forth about fees and visitation and GAL fees and things like that during that gap time. From February 14th of 2011 until March 28th of 2012, litigation continued. Okay. What kind of litigation? Fees, visitation. I think we may have talked about medical expenses. In other words, the only final order that was entered, and it reflects that it's a final order in handwriting by the court on the last page of that order. What page in the appendix are you? This would be in my appendix, A57, states, this is a final and appealable order and finds that there's no ‑‑ reading is hard to decipher, but I believe that it says basically that there's no just reasons to delay an appeal further. So that was the final order in this case, and our notice is within 30 days of that. Let me ask you, was this thing you labeled the 214.01 petition, was it filed in the 2008 case or the 2009 case? It was filed in the 2008. It was attached to our petition to intervene. Our parentage petition and our 2-1401 were both attached to our petition. I think that's the rule of intervention. You have to show what you'll file if you get in, and these are the two things we ‑‑ So you filed 214.01 in the prior case and then filed your own separate case in 2009. Let me clarify. What's the case number in the circuit court? We filed it 09F50. It just happened to be in my documents. That was dismissed once we became aware of the 08 case that we're in. In the 08 case, we filed a petition to intervene and simultaneously, same day, we filed both our 2-1401 and our petition to establish. So in other words, they have been intertwined. They asked for similar relief. I've admitted that this was a velvet and suspenders kind of thing. But basically, those were intertwined, not only that they were both filed simultaneously, they were both heard in December of 2010, they were both addressed by orders entered in February 14th of 2011, and they're ‑‑ that even ‑‑ that they basically have been almost the same issue. Now, I'll admit that counsel makes a legitimate suggestion that perhaps the 2-1401 could have been appealed within 30 days, back in 2011. The other one could not. The other one was not right. And, you know, I'll stand here more certain that we've got timely notice on the petition to establish because we did file within 30 days of the final appealable order. Now, there is a rule that says basically if you appeal from the final order, the last order, you've got your language showing it is a final appealable order, basically every ‑‑ you know, the pathway there can all be addressed. Of course, I've never seen a case, and maybe you're aware of some where a 214 was wrapped, 21401 was wrapped up with something else, but usually it's a single attack on a prior judgment, and that's the only thing there. And so this is seeing things in this case, I'm 62, and I've never seen 90% of this stuff. I have to acknowledge that I guess that's the argument I'm making is that the general rule as to 21401s is painfully clear. We've got two arguments as to why we should still walk out of here with this claim as the father. One, perhaps the court would find that because of the unusual circumstance of this case, the 21401 should have been granted and the court has jurisdiction to address that. If not, I still think the denial of ‑‑ we also asked to correct all orders and put my client in and take the other father out in our petition to establish. There's now authority that says that if you file a 7A petition, you can disestablish the other person, in other words, one dad at a time. That's why it's one minute. And I think that's a principle that, you know, a lot of times you have different fathers over the course of the child's minority, through adoption, people passing away, remarriage adoption. You know, whatever the father did can't be undone. Nobody wants to undo it. He's now a stepfather. He has that recognized right. But we have filed a verified petition asking that he be taken out. That was heard by the court on December 8th of 2010. That was denied in part on February 14th of 2011. The litigation went on for another 13 months. Then we got a final appealable order entered last March, and within 30 days of that order, we filed a notice of appeal. Thank you. Any questions? Thank you. I'm afraid to ask. Thank you very much. We appreciate your arguments here today, and we will be conferencing this case with Justice Litton on another occasion and hopefully rendering a decision without undue delay. But there's a lot of food for thought in this file. Now we'll stand at brief recess for a panel change.